IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIV. NO.  11-00525 JMS/RLP |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANT AMERICAN SAMOA GOVERNMENT'S MOTION FOR |
| vs. | ) ) ) | PARTIAL SUMMARY JUDGMENT TO LIMIT SCOPE OF CLAIMS IN |
| AMERICAN SAMOA GOVERNMENT; AMERICAN SAMOA GOVERNMENT DEPARTMENT OF HUMAN RESOURCES, | ) ) ) ) ) | LAWSUIT |
| Defendant. | ) ) ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT AMERICAN SAMOA GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO LIMIT SCOPE OF CLAIMS IN LAWSUIT

## I. INTRODUCTION

On August 30, 2011, Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") filed this action asserting that Defendant American Samoa Government ("ASG") and its Department of Human Resources ("DHR")[1] subjected employee Eseneiaso Liu and a class of similarly situated individuals to unfavorable job reassignments and other adverse employment

---

[1] Although the EEOC identified the ASG and DHR as separate Defendants, the parties agree that the DHR is a department within the ASG and not a separate entity.  Doc. No. 27 at 2 n.1.

actions on the basis of age in violation of Age Discrimination Employment Act of 1967, 29 U.S.C. § 621 et seq. (the "ADEA").

Currently before the court is ASG's Motion for Partial Summary Judgment to Limit Scope of Claims in Lawsuit. ASG argues that the EEOC seeks to use discovery impermissibly to find and assert discrimination claims throughout the entire ASG, even though its investigation and conciliation during the administrative process was limited to Liu and the DHR. Based on the following, the court GRANTS the ASG's Motion for Partial Summary Judgment.

## II. BACKGROUND

### A.  The ASG and the DHR

The Territory of American Samoa has a total land area of seventy-six square miles, which consists of five islands and two atolls. *See* Doc. No. 36-20, Pl.'s Ex. 19. The largest island, Tutuila Island, is only eighteen miles long and six miles wide, Doc. No. 36-21, Pl.'s Ex. 20, and is where all of the ASG's departments are located, save for some satellite offices on other islands. Doc. No. 36-22, Pl.'s Ex. 21.

Despite America Samoa's limited geographical size, the ASG has thirty-three departments and/or offices, and employs approximately 5,000 people.

*See* Doc. No. 31-10, Evelyn Langford Decl. ¶ 2.[2]  Each department/office is overseen by a director, who generally has authority over only that specific department/office.  *Id.* ¶ 3.

The DHR consists of approximately forty-seven employees and is overseen by Evelyn Langford, who was appointed by Governor Togiola Tulafono to the position of Director of the DHR in January 2009.  *Id.* ¶ 4; Doc. No. 36-5, Pl.'s Ex. 4 at EEOC00064.  The DHR is in charge of government-wide, centralized personnel policies and practices.  Doc. No. 36-19, Liu Decl. ¶ 9.  As  a result, Langford's duties include, among other things, implementing, administering, and ensuring compliance with EEO policies and the Affirmative Action plan throughout the ASG, *see* ASG Admin. Code §§ 4.0237, 4.1103, as well as approving removals, suspensions, demotions, and involuntary reassignments of all ASG employees.  *Id.* §§ 4.0802, 4.0804(a).

## B.   Liu's Charge of Discrimination

In August 2009, Liu, an employee in the DHR, filed a Charge of Discrimination ("Charge") with the EEOC asserting, among other things, that the DHR had discriminated against her on the basis of age.  Doc. No. 36-2, Pl.'s Ex. 1.

---

[2]  Throughout its papers, the ASG asserts that it employs 4,700 employees, even though the record evidence states that the ASG employs 5,000 employees.  Ultimately, this difference in 300 employees does not affect the analysis.

Specifically, the Charge asserts:

> On March 20, 2009, [Langford] announced in a staff meeting that all employees (50 years and older) should retire and let the younger generation take over their jobs. In the same meeting, [Langford] also said that she does not want to give orders to a female who was in the same age group because it was giving orders to her own grandmother.
>
> On April 6, 2009, [Langford] issued me a letter reassigning [me] from my Chief, Personnel Division position to Chief, Human Capital Strategic Planning Division. This position did not exist in the Human Resources Organizational Chart. Further, I do not believe that I am qualified to perform the position's duties. I am aware that a younger, male was placed in my previous position.
>
> I believe that I have been discriminated against because of my age (59) in violation of the [ADEA] . . . .

*Id.*

## C.   The EEOC Investigation

The EEOC proceeded to investigate Liu's Charge.  In an August 26, 2009 Notice of Charge of Discrimination addressed to Langford, "Human Resources Director, American Samoa Government, Dept of Human Resources," the EEOC asked that she provide by September 28, 2009 "a statement of your position on the issues covered by [Liu's Charge] . . . ."  Doc. No. 36-3, Pl.'s Ex. 2.

On October 15, 2009, Langford responded by outlining her non-

discriminatory reasons for transferring Liu and explaining her statements at the March 20, 2009 meeting.  Doc. No. 36-12, Pl.'s Ex. 11, at EEOC00345.  Langford explained that on March 20, 2009 she held her initial department meeting to explain her "guidance and vision in accordance with . . . 1) Governor's vision of the Department of Human Resources[;] 2) Governor's Transition Report, December 2008[;] 3) Legislative Branch (Senate & House) during Confirmation Hearings[; and] 4) DHR Employee Interviews (conducted with every DHR Employee upon my arrival)[.]"  *Id.*  She further explained that her comment at the meeting that she did not want to give orders to a female in the same age group was "in relation to the cultural aspects of rendering respect for our elders."  *Id.* Langford also denied that she stated that all employees fifty years and older should retire.  Rather, Langford asserted that she referred to the retirement of the "senior workforce" in conjunction with a retirement package incentive to be introduced by Governor Tulafono in the next legislative session.  *Id.*; *see also* Doc. No. 36-5, Pl.'s Ex. 4, at EEOC00065 (Langford EEOC interview in which she reiterated that her comment regarding the "senior work force" was directed to the Governor's plan for a retirement package incentive "across the government" to free up positions held by top level individuals for more vacancies for mid-level managers and students returning home).

Langford attached to her position statement a press release providing

Governor Tulafono's July 13, 2009 statement to the legislature explaining his

legislative agenda, which included incentivizing retirement to open positions for

younger workers:

> **Retirement Incentive Act --** I remain committed to
> providing a sound plan for encouraging our top-level
> career service employees to take up retirement or move
> to the private sector in order to open up these positions
> for others to move up in government.  By freeing up
> these positions, we may be able to provide much needed
> and wanted jobs for our children returning from school as
> well as returning sons and daughters from the military.
> The updated skill sets possessed by these individuals will
> contribute to the overall productivity and effectiveness
> moving forward.

Doc. No. 36-8, Pl.'s Ex. 7 at EEOC00007.

Subsequent EEOC interviews with DHR employees largely

corroborated Liu's version of what occurred during the March 20, 2009 meeting.

Specifically, seven employees recalled that Langford stated that workers over the

age of fifty should retire.  *See* Doc. No. 36-4, Pl.'s Ex. 3.  These interviews further

revealed that another DHR employee, Manuia Lacumbra, believed that Langford

involuntarily transferred her to a less desirable position due to her age and then

filled her position with a younger employee.  *Id.* at EEOC00076.  In total, the

EEOC interviewed eight DHR employees, and sought interviews from an

6

additional three DHR employees.  Doc. No. 31-4, Def.'s Ex. C.  The EEOC also

sought to interview Governor Tulafono, but the ASG's Office of the Attorney

General requested that he instead be provided a list of written questions.  Doc. No.

36-9, Pl.'s Ex. 8.[3]

   Beyond these interviews, the EEOC sought various documents from

the DHR.  In a January 12, 2010 letter directed to the ASG's Office of the Attorney

General regarding the matter of "Eseneiaso Liu v. American Samoa Government-

Department of Human Resources," the EEOC sought documents regarding DHR

policies, organization, and complaints, personnel files for certain DHR employees,

information regarding Liu's transfer, and the attendance record for the March 20,

2009 meeting.  Doc. No. 31-13, Def.'s Ex. J.  On January 28, 2010, the ASG

responded by providing the EEOC (1) information pertaining to complaints about

Liu; (2) a transition report for the DHR; (3) an organizational chart for the DHR;

(4) personnel files for three DHR employees; (5) policy documents pertaining to

Liu's transfer; (6) a job description for Chief, Human Capital and Strategic

Planning; (7) the budget for the Chief, Human Capital and Strategic Planning; (8) a

list of attendees at the March 20, 2009 DHR meeting; and (9) a timeline pertaining

---

  [3] Neither party addresses whether the EEOC ever actually presented questions to Governor Tulafono and/or the content of those questions.

to Liu.  Doc. No. 31-12, Lisa Johns Decl. ¶ 3l; Doc. No. 36-12, Pl.'s Ex. 11 at

EEOC 00389.  On March 15, 2010, the EEOC made a second request for

information regarding DHR reassignments, retirements, and

discharges/terminations.  *See* Doc. No. 31-14, Def.'s Ex. K.  On March 19, 2010,

the ASG responded by providing information regarding seven DHR employees.

Doc. No. 31-12, Long Decl. ¶ 5.

### D.    The Conciliation Process

On July 21, 2010, the EEOC issued a Letter of Determination listing

the Charging Party as Liu and the Respondent as "American Samoa Government[,]

Department of Human Resources."  Doc. No. 36-10, Pl.'s Ex. 9.  The letter

explained that "there is reasonable cause to believe that [Liu] and a class of

employees 40 years and older were subjected to harassment and reassigned because

of their age."  *Id.*  The letter further invited Respondent to participate in

conciliation.  *Id.*

During the conciliation process, the EEOC sought monetary relief on

behalf of Liu as the charging party, and Lacumbra as the class member.  *See* Doc.

No. 36-13, Pl.'s Ex. 12 at EEOC00919, 927.  According to the ASG, because

Lacumbra was the only class member for which the EEOC sought relief, the ASG

assumed that the EEOC's "class" consisted of only Liu and Lacumbra, both DHR

employees.  Doc. No. 31-12, Johns Decl. ¶ 22.  With that said, however, the EEOC

also sought remedial relief applicable to the entire ASG including, among other

things, "an effective anti-discrimination and harassment policy and reporting

procedure [that] shall be issued annually to all ASG employees," an EEOC

program to handle complaints of discrimination, and mandatory training for all

employees.  Doc. No. 36-13, Pl.'s Ex. 12 at EEOC00921-22.  The draft agreement

included a signature block for "American Samoa Government, Respondent."  *Id.* at

EEOC00924.[4]

In response, the ASG offered a counter-proposal (which the EEOC

rejected), and the parties engaged in conciliation for two months in an attempt to

reach settlement.  Doc. No. 31-12, Johns Decl. ¶¶ 12-13.  Over this time, the EEOC

did not seek or mention relief as to any employees other than Liu and Lacumbra.

*Id.* ¶ 14.

In September 2010, it appeared that the parties had reached an

agreement, with the only issue being that Governor Tulafono needed to give his

final approval.  *See* Doc. No. 36-14, Pl.'s Ex. 13.  On September 27, 2010,

---

[4]  Defendant asserts that the proposed "Conciliation Agreement" included a signature block for Respondent as "American Samoa Government, Department of Human Resources." Doc. No. 31-12, Johns Decl. ¶ 12.  The court cannot determine whether Defendant is mistaken or is referring to another draft conciliation agreement -- Defendant did not present the draft conciliation agreement(s) and the only one provided by the EEOC includes a signature block for Respondent as "American Samoa Government."  *See* Doc. No. 36-13, Pl.'s Ex. 12.

however, the EEOC received a letter stating that the "American Samoa

Government (ASG) maintains their [sic] position that the reassignment of Ms. Liu

and the class member, Ms. Lacumbra, did not result from age discrimination in any

way.  As a result, ASG is not comfortable signing the Conciliation Agreement at

this time."  Doc. No. 26-15, Pl.'s Ex. 14.

On September 28, 2010, the EEOC sent a letter addressed to

"American Samoa Government[,] Office of Attorney General," stating that the

EEOC "has determined that efforts to conciliate the above-mentioned charge . . .

have been unsuccessful. . . .  No further efforts to conciliate this case will be made.

Accordingly, we are at this time forwarding the case to the Regional Attorney in

the Los Angeles District Office for review and consideration of litigation."  Doc.

No. 36-16, Pl.'s Ex. 15.  In a similar letter to Liu, the EEOC stated that her case is

being referred to the EEOC's regional attorney, who would "determine whether the

EEOC [would] bring suit in Federal District Court against the above named

respondent."  Doc. No. 31-6, Def.'s Ex. E.  Both letters referred to the charge as

"Eseneiaso Liu v. American Samoa Government-Department of Human

Resources."  *Id.*

///

///

E.     **The Present Lawsuit**

On August 30, 2011, the EEOC filed its Complaint against the ASG asserting that the ASG "subjected Ms. Liu and a class of similarly situated individuals to unfavorable job reassignments and other adverse employment actions on the basis of age, over forty, in violation of the ADEA."  Doc. No. 1, Compl. at Nature of Suit.  The Complaint outlines Liu's allegations of discrimination, and also asserts that another unnamed DHR employee (presumably Lacumbra) was involuntarily reassigned to an unfavorable position after she told Langford that she would not retire.  *Id.* ¶¶ 13-17.  The Complaint further refers to the Governor's public speech where he stated his commitment for top-level career service employees to retire or move to the private sector to create job openings for children returning from school.  *Id.* ¶ 12.  The Complaint seeks injunctive relief, back wages for Liu and the class of similarly-situated aggrieved individuals, and costs.

During a December 15, 2011 Rule 16 Scheduling Conference, the EEOC provided an overview of its case as involving two claimants, Liu and Lacumbra.  Doc. No. 31-1, Leong Decl. ¶¶ 10-11.  In their January 16, 2012 initial disclosures, the EEOC identified Liu and Lacumbra as the claimants in this case, and further identified five DHR employees, the Governor, and Lieutenant

Governor as witnesses.  Doc. No. 31-7, Def.'s Ex. F.  During discovery, however,

the EEOC sought information regarding all ASG employees, *i.e.*, its 5,000

employees spanning the ASG's thirty-three departments.  Doc. No. 31-9, Def.'s

Ex. H.  Defendant objected to this broad discovery, and in response the EEOC

explained that it is asserting that the ASG discriminated against older employees

both within the DHR and outside it by implementing a policy that was adverse to

older employees.  Doc. No. 36-17, Pl.'s Ex. 16.  The parties ultimately agreed to

resolve the scope of the lawsuit through this Motion for Partial Summary

Judgment.  Leong Decl. ¶ 16.

On June 26, 2012, Defendant filed its Motion for Partial Summary

Judgment.  The EEOC filed its Opposition on September 11, 2012, and a Concise

Statement on September 21, 2012, and Defendant filed a Reply on September 28,

2012.  A hearing was held on October 2, 2012.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment[5] is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

---

[5]  Some courts have addressed the issue of whether the EEOC provided adequate notice as a jurisdictional issue under Rule 12(b)(1).  But because the court finds (and the parties agreed at the October 2, 2012 hearing) that the analysis would be the same as either a motion to dismiss under Rule 12(b)(1) or a motion for summary judgment under Rule 56, the court need not determine whether Rule 12(b)(1) is a more appropriate vehicle for raising the notice issue.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV.  <u>ANALYSIS</u>

The ASG argues that the EEOC's pre-litigation efforts did not provide

the ASG sufficient notice of the potential scope of the claims that the EEOC may

seek to assert in this action -- *i.e.*, that the ASG did not have notice that the EEOC

may seek to assert claims as to the entire ASG and not merely the DHR.  The court

first outlines the relevant framework, and then analyzes the EEOC's investigation

and conciliation to determine whether the ASG was provided adequate notice.

### A.    **Framework**

The ADEA provides that before the EEOC may bring an action

against an employer-defendant, it must "attempt to eliminate the discriminatory

practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27 (1991); *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1505 n.5 (9th Cir. 1990). This requirement "embodies the congressional intent that enforcement be effected wherever possible without resorting to formal litigation." *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985) (quotations and citations omitted).

In general, "[c]onciliation contemplates charge, notice, investigation and determination of reasonable cause." *See EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) (discussing Title VII).[6] Specifically, before the EEOC may bring suit, it must (1) receive a charge of unlawful employment practice; (2) "notify the alleged wrongdoer of the charge, conduct an investigation, and determine whether reasonable cause exists to believe that the charge is true;" (3) "eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion;" and (4) notify the respondent in writing if it determines "that further conciliation efforts would be futile or

---

[6] The parties do not draw any distinctions between Title VII, ADA, or ADEA claims in terms of the administrative process in which the EEOC must engage, and the court sees no practical distinction either. The court therefore cites to cases discussing claims beyond the ADEA.

nonproductive." *Id.* at 607 (quotation and citations omitted); *see also EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 672 (8th Cir. 2012) (discussing these steps as "sequential steps in a unified scheme for securing compliance with Title VII" (emphasis omitted)).  "Each step along the administrative path -- from charge to investigation and from investigation to lawsuit -- must grow out of the one before it." *EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974, 979 (S.D. Ind. 2003) (citing *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)).  In other words, "the EEOC's investigation must occur within the 'scope of the charge' -- that is, it must reasonably grow out of the charge underlying it, [and] "a lawsuit must be like or reasonably related to the underlying EEOC charge." *Id.*

As a result, the scope of permissible claims in a civil action is limited by what an EEOC investigation uncovers and what the EEOC conciliates:

> So long as discovery of the new discrimination arises out of the reasonable investigation of the charge filed, it can be the subject of an EEOC "reasonable cause" determination to be followed by an EEOC offer of conciliation and, if conciliation fails, by a civil suit without the filing by EEOC of a separate charge on the new claim.
>
> In other words, the original charge is sufficient to support EEOC administrative action, as well as an EEOC civil suit, for any discrimination stated in the charge itself or discovered in the course of a reasonable investigation of that charge, provided such additional discrimination was included in the EEOC "reasonable cause" determination and was followed by compliance with the conciliation

16

procedures of the Act.

*EEOC v. Hearst Corp.*, 553 F.2d 579, 580 (9th Cir. 1977) (per curium); *see also*

*EEOC v. Occidental Life Ins. Co.*, 535 F.2d 533, 541 (9th Cir. 1976).  That is,

"[t]he EEOC may seek relief on behalf of individuals beyond the charging parties

and for alleged wrongdoing beyond those originally charged; however, the EEOC

must discover such individuals and wrongdoing *during the course of its*

*investigation*."  *EEOC v. Dillard's Inc.*, 2011 WL 2784516, at *6 (S.D. Cal. July

14, 2011) (collecting cases).

  The reason for this limitation on the claims that the EEOC may bring

is that "[a]bsent an investigation and reasonable cause determination apprising the

employer of the charges lodged against it, the employer has no meaningful

opportunity to conciliate."  *CRST Van Expedited, Inc.*, 679 F.3d at 676 (citing

*EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 n.14 (4th Cir. 1976)).  Thus, "[t]he

relatedness of the initial charge, the EEOC's investigation and conciliation efforts,

and the allegations in the complaint is necessary to provide the defendant-employer

adequate notice of the charges against it and a genuine opportunity to resolve all

charges through conciliation."  *Dillard's Inc.*, 2011 WL 2784516, at *6 (citing

*EEOC v. Outback Steak House of Fla., Inc*., 520 F. Supp. 2d 1250, 1263 (D. Colo.

2007)).

This limit on the scope of EEOC claims in a civil suit also serves to limit the discovery the EEOC may conduct in the civil action -- although "[t]he EEOC enjoys significant latitude to investigate claims of discrimination, and to allege claims in federal court based on the results of its investigations, [there is] a clear and important distinction between 'facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit.'" *CRST Van Expedited, Inc.*, 679 F.3d at 675 (quoting *Dillard's Inc.*, 2011 WL 2784516, at *7); *see also Jillian's*, 279 F. Supp. 2d at 982. "Where the scope of its pre-litigation efforts are limited -- in terms of geography, number of claimants, or nature of claims -- the EEOC 'may not use discovery in the resulting lawsuit 'as a fishing expedition' to uncover more violations.'" *CRST Van Expedited, Inc.*, 679 F.3d at 675 (quoting *Dillard's Inc.*, 2011 WL 2784516, at *7); *see also EEOC v. Target Corp.*, 2007 WL 1461298 (E.D. Wis. May 16, 2007) (citing *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996)).

**B.      Application**

Applying this framework, the court must determine whether the EEOC discovered government-wide discrimination during its investigation, included such claims in its "reasonable cause" determination, and conciliated those claims with the ASG. *See Hearst Corp.*, 553 F.2d at 580. In other words, the court

must determine whether during its investigation and conciliation the EEOC

provided the ASG notice of the government-wide claims that the EEOC now seeks

to investigate and bring in this action.

Starting with Liu's Charge, it was directed solely to alleged age

discrimination that she experienced as an employee of the DHR. *See* Doc. No. 36-

2, Pl.'s Ex. 1. Liu's Charge recites that during a DHR staff meeting, Langford

allegedly announced that all employees fifty years and older should retire to open

up positions for the younger generation, and that Liu was subsequently transferred

to a less desirable position within the DHR so that a younger employee could take

her previous position. *Id.* The Charge makes no allegations regarding any other

departments and does not assert that the DHR implemented this "retirement plan"

in any other departments. Thus, at least from the Charge there is no indication that

government-wide discrimination was alleged.

The EEOC's investigation was similarly limited to conduct within the

DHR. Specifically, the EEOC (1) interviewed only DHR employees, focusing on

Langford's statements to the DHR regarding retirement and possible age

discrimination within the DHR, Doc. No. 36-4, Pl.'s Ex. 3; (2) requested

documents largely directed to the DHR and Liu's transfer, Doc. Nos. 31-13, -14,

Def.'s Exs. J-K; (3) identified only Liu and Lacumbra as potential claimants; and

(4) consistently identified the Respondent as the "American Samoa Government, Department of Human Resources."  *See, e.g.*, Doc. Nos. 31-13, -14, Def.'s Exs. J-K.

Notably, the EEOC limited its investigation to the DHR even though the facts known to the EEOC arguably opened the door to a larger investigation -- the EEOC was well-aware that the DHR was the very department within the ASG responsible for EEOC policies, and Langford attributed her comments at the March 20, 2009 staff meeting to Governor Tulafono's efforts to enact legislation directed to "encouraging our top-level career service employees to take up retirement or move to the private sector in order to open up these positions for others to move up in government."[7]  Doc. No. 36-8, Pl.'s Ex. 7 at EEOC00007.  But the EEOC did not seek information regarding whether Langford's reassignment of Liu and Lacumbra could be tied to a larger ASG policy, and did not seek information regarding any other departments within the ASG.  In other words, the EEOC performed no investigation to connect the dots between Governor Tulafono seeking legislation in the future and an unlawful, government-wide policy in the present.  As a result, there is no indication that the EEOC investigated, much less

---

[7]  The EEOC does not argue, and there is no evidence suggesting, that Governor Tulafono's early retirement plan violated the ADEA.  Indeed, it is not unlawful for an employer to offer a voluntary early retirement plan.  *See* 29 U.S.C. § 623(f)(2)(B)(ii).

formed a reasonable belief through its investigation, that age discrimination occurred beyond the DHR.

The scope of conciliation was similarly limited to the DHR.  Although the EEOC sought government-wide remedial relief, the EEOC sought monetary relief on behalf of only Liu as the charging party and Lacumbra as the class member, *see* Doc. No. 36-13, Pl.'s Ex. 12 at EEOC00919, 27, which led the ASG to believe that the "class" consisted of only Liu and Lacumbra, both DHR employees.  Doc. No. 31-12, Johns Decl. ¶ 22.  As a result, there was no "affirmative indication" that the EEOC's allegations might result in government-wide claims on behalf of any ASG employee.  *See Dillard's Inc.*, 2011 WL 2784516, at *8 (rejecting that suggested changes to companywide policy would provide employer notice of companywide claims where conciliation focused on two individuals from one store).

The court's conclusion that the EEOC did not provide the ASG notice that it would assert government-wide claims is confirmed by the fact that it is only now in this action that the EEOC seeks broad discovery to identify additional class members outside of the DHR.  In other words, the EEOC seeks to gather facts in the discovery phase of this action because it did not do so during its investigation. *See CRST Van Expedited, Inc.*, 679 F.3d at 675 (drawing a distinction "between

'facts gathered during the scope of an investigation and facts gathered during the discovery phase of an already-filed lawsuit'" (quoting *Dillard's Inc.*, 2011 WL 2784516, at *7)).  Now one year past the commencement of this action, the EEOC still has not identified any claimants other than Lacumbra and Liu, and has offered the court no explanation as to how many individuals may be in such class.  *See EEOC v. CRST Van Expedited, Inc.*, 2009 WL 2524402, at *9 (N.D. Iowa Aug. 13, 2009) (rejecting classwide-claims where "the EEOC did not know how many allegedly aggrieved persons on whose behalf it was seeking relief," but "[i]nstead . . . was using discovery to find them").  The EEOC may not attempt to expand its claims through discovery -- its investigation was limited to age discrimination claims within the DHR, and it may not use this lawsuit "as a 'fishing expedition' to uncover more violations."  *CRST Van Expedited, Inc.*, 679 F.3d at 675 (quoting *Dillard's Inc.*, 2011 WL 2784516, at *7); *see also EEOC v. ABM Indus. Inc.*, 2008 WL 5385618, at *8 (E.D. Cal. Dec. 23, 2008) (rejecting request for state-wide discovery because it would impermissibly "allow Plaintiffs to search for other employees with colorable claims, with no factual nexus other than the fact that they do or did work for Defendants").

      In opposition, the EEOC acknowledges that the test is ultimately one of notice to the ASG.  The EEOC nonetheless argues that *Lucky Stores v. EEOC*,

714 F.2d 911 (9th Cir. 1983), establishes that an employer receives adequate notice of a lawsuit encompassing multiple locations (or in this case, multiple departments) even though the administrative process focused on only one location  so long as (1) the locations share significant geographic proximity, (2) the locations share significant overlap in personnel matters, and (3) there is continuity or overlap in discrimination.  *See* Doc. No. 36, Pl.'s Opp'n at 1.  The court rejects that *Lucky Stores*, which addresses very specific facts not applicable to this action, supports the generalized framework that the EEOC now propounds.

In *Lucky Stores*, the employer opened its Vacaville warehouse in January 1978 with a skeleton staff.  714 F.2d at 911.  It began full operations in June 1978 after closing its Sacramento warehouse and reducing activity in its San Leandro warehouse, and by staffing its Vacaville warehouse with many employees who had previously worked at these two other facilities (over two-thirds of the employees were from the other facilities).  *Id.* at 911-12.  The EEOC investigated and conciliated sex discrimination claims directed to the Vacaville warehouse only, yet brought a civil action asserting claims directed to all three warehouses.  *Id.* at 911.  Based upon a close analysis of the unique facts presented, *Lucky Stores* determined that the employer had notice of these expanded claims.  Specifically, *Lucky Stores* acknowledged that the applicant pool for each facility differed,

different unions represented employees at each facility, and different persons were responsible for hiring at each facility. *Id.* at 913. *Lucky Stores* nonetheless determined that the employer had adequate notice of these broadened claims given that "Vacaville is essentially a consolidation of the Sacramento and San Leandro operations," and the EEOC was now asserting claims based on practices at these predecessor facilities "which affected operations and positions later transferred to" Vacaville. *Id. Lucky Stores* therefore concluded that "[b]ecause Vacaville is the successor of those facilities added to the amended complaint, Lucky received 'adequate notice during administrative investigation of the substance of the issue subsequently raised.'" *Id.* (quoting *Occidental Life*, 535 F.2d at 542).

These unusual facts -- addressing a successor facility -- do not, as the EEOC argues, suggest that an employer has notice of company-wide claims any time where locations share significant geographic proximity, locations overlap in personnel matters, and the EEOC asserts similar claims. And *Lucky Stores* is simply not helpful in addressing the facts presented here -- the DHR is not a "successor" to other departments within the ASG, much less even a "consolidation" of other departments. And although it is true that many ASG departments are in the same office building and employees have transferred between departments, *see* Doc. No. 36-19, Pl.'s Ex. 18, Liu Decl. ¶¶ 5-6 (reciting

24

that at least 16 DHR employees transferred from other departments), those facts can just as easily be chalked up to the fact of island geography and do not suggest notice where the EEOC never investigated any government-wide policy.

In further support of its framework for determining notice, the EEOC argued for the first time at the October 1, 2012 hearing that *EEOC v. American National Bank*, 652 F.2d 1176 (4th Cir. 1981), supports the EEOC's framework and is controlling because it was adopted by *EEOC v. Bruno's Restaurant*, 13 F.3d 285 (9th Cir. 1993).  This argument wholly lacks merit.

As an initial matter, the EEOC strains credulity in suggesting that *American National Bank*, a Fourth Circuit case, is controlling authority in the Ninth Circuit simply because *Bruno's Restaurant* cited to it.  *Bruno's Restaurant* did not discuss *American National Bank* in any detail, and did not even address directly the issue of notice to an employer.  Rather, *Bruno's Restaurant* overruled the district court's award of attorneys' fees based on the EEOC's failure to conciliate its pattern and practice claims brought in the civil action.  *Id.* at 288. *Bruno's Restaurant* held that "[t]he mere fact that the EEOC may have failed to conciliate is not enough to find that bringing suit was unreasonable;" instead, the relevant question is "whether its belief that it had done so was reasonable."  *Id.*  In determining that the EEOC could have reasonably believed that it had conciliated a

25

pattern and practice claim, *Bruno's Restaurant* cited to *American National Bank*, describing in a parenthetical its holding that the "EEOC's conciliation efforts regarding discriminatory practices at one branch office were sufficient to confer subject matter jurisdiction on the district court over claims of similar discrimination at other branches." *Id.* at 289. In other words, *Bruno's Restaurant* cited *American National Bank* for the simple proposition that the EEOC had at least *some* basis to believe it conciliated its claims; it did not adopt *American National Bank* as law of this circuit. In contrast, *Lucky Stores* discussed *American National Bank* at length and specifically chose not to determine "whether to accept the rule of *American National Bank* that unified operation and control of separate plants is itself sufficient to permit their inclusion in the litigation." 714 F.2d at 913. Thus, whether *American National Bank* is persuasive authority in the Ninth Circuit is an open question at best.

Further, regardless of whether *American National Bank* is controlling or persuasive authority, it is distinguishable on its facts and ultimately not helpful in this court's analysis. *American National Bank* allowed EEOC claims against three bank branches even though the EEOC reasonable cause determination was directed to only one branch. *American National Bank* defined the issue as "whether the district court had jurisdiction over the same charges of discrimination

26

against a single defendant, expanded to include the same practices at all its branch

offices when the original charge and investigation focused on one city but where

there was common ownership and control over branches in both that city and a

nearby city, and where the challenged hiring practices for all branches were

similar."  652 F.2d at 1185.  *American National Bank* answered this question in the

affirmative because (1) the EEOC raised a single charge of race discrimination in

hiring; (2) the branches were "subject to unified supervision and control and using

similar hiring practices;" (3) the original charge filed with the EEOC was sent to

the branch manager at one office but acknowledged by a vice-president from the

other; (4) the bank's attorney, a participant in the conciliation effort, "presumably

represented" the entire bank; and (5) any changes agreed to in conciliation would

"logically and necessarily" apply to the other branches.  *Id.* at 1185-86.

Unlike *American National Bank*, this is not a case where the EEOC is

challenging a company-wide policy as applied in one department.  Indeed, there is

no indication that Langford transferred Liu and Lacumbra pursuant to any

government-wide policy, and the EEOC never investigated the existence of such

policy.  Further, there is a significant difference in scale -- unlike in *American*

*National Bank* where the EEOC investigated a company-wide policy applied at one

branch and brought claims encompassing two additional branches, the EEOC here

seeks to assert claims encompassing the ASG's thirty-three departments and nearly 5,000 employees even though it investigated only one department's practices, which encompasses only forty-seven employees. Where the EEOC did not assert in its investigation a discriminatory government-wide policy and focused on only one department, the ASG would have no reasonable basis to believe that government-wide claims were at issue.[8]

The EEOC also argues that evidence establishes that the DHR had notice because it "did not act alone" in "treat[ing] Governor Tulafono's policy goal as effective even though no legislation was ever adopted." Doc. No. 36, Pl.'s Opp'n at 14. Specifically, the EEOC presents evidence that Dr. Claire Poumele, the Director of the Department of Education, understood Governor Tulafono's comments as "encouraging departments to look at their workforce to evaluate whether there was any way the department could get older workers to retire." Doc. No. 36-23, Pl.'s Ex. 22, Poumele Decl. ¶ 3. William Emmsley, a Dean at the American Samoa Government Community College, reported that during a Deans and Directors meeting the President of the College said something to the effect that

---

[8] To the extent argued by the EEOC, the court also rejects that the ASG had notice of government-wide claims simply because the Attorney General's office and the Governor were involved in conciliation. As aptly stated by the ASG, accepting this "reasoning would be tantamount to creating a nonsensical legal rule or presumption that having the in-house counsel defend the company or involvement of a top official at conciliation opens the company up to company-wide claims in a lawsuit to follow." Doc. No. 43, Def.'s Reply at 16.

28

"we need to make way for younger people to move up in management."  Doc. No.

36-24, Pl.'s Ex. 23, Emmsley Decl. ¶ 4.  These statements are merely individuals'

interpretations of Governor Tulafono's plans to enact legislation regarding

retirement of government workers; they do not suggest a government-wide plan to

discriminate against older workers.  And even if these statements could support an

inference of a government-wide policy, the fact of a government-wide policy

(although deeply troubling) is beside the point.  Rather, the relevant inquiry is what

the EEOC's administrative investigation uncovered and what claims were

conciliated with the ASG.  These statements were not part of the investigation and

subsequent conciliation.

  The EEOC also argues that the ASG had notice because the EEOC

always asserted class-wide claims.  The court is not denying the EEOC's class-

wide claims as they relate to age discrimination within the DHR, yet it should go

without saying that asserting class-wide claims directed to one department is very

different than asserting claims across the entire ASG.  Thus, although the ASG did

not have notice of government-wide claims, the court finds that the EEOC's efforts

were sufficient to put the ASG on notice of possible age-discrimination class

claims within the DHR -- the EEOC investigated the DHR and from this process

determined that there was reasonable cause to believe that Liu "and a class of

employees 40 years and older were subjected to harassment and reassigned because of their age."  *See* Doc. No. 36-11, Pl.'s Ex. 10; *see also Dillard's Inc.*, 2011 WL 2784516 at *8 (finding that investigation focusing on two individuals provided sufficient notice that defendant faced class claims for individuals in same store) (citing *EEOC v. Outback Steakhouse of Fl., Inc.*, 520 F. Supp. 2d 1250, 1267 (D. Colo. 2007) (finding that where the investigation focused on a three-state region, the EEOC's references to "Charging Part[ies] and a class of females" may have put defendants on notice of a potential regional class, but not a potential nationwide class); *Jillian's*, 279 F. Supp. 2d at 983 (the reference in the EEOC's determination to a "class of similarly-situated male employees and applicants" provided sufficient notice of a potential "local class").

Finally, the EEOC argues that in the event the court finds that the ASG did not receive adequate notice, the court should stay the proceedings for further conciliation.  Doc. No. 36, Pl.'s Opp'n at 37.  The court rejects this request -- returning to conciliation does not fix the fact that the EEOC failed to not only conciliate government-wide claims, but also to investigate them.  Whether a stay is appropriate to allow the EEOC to both investigate and conciliate government-wide claims is not before the court; if the EEOC believes this is the appropriate course of action, it may bring the appropriate motion.

In sum, the court finds that the ASG was not provided sufficient notice as to government-wide claims.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion for Partial Summary Judgment.  The EEOC's class claims against the ASG for age discrimination within the DHR remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 5, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*U.S. Equal Employment Opportunity Comm. v. Am. Samoa Gov't et al.*, Civ. No. 11-00525 JMS/RLP; Order Granting Defendant American Samoa Government's Motion for Partial Summary Judgment to Limit Scope of Claims in Lawsuit